UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL SOROKTI,

                                         Plaintiff,

                                                              Case # 21-CV-6709-FPG

v.

                                                              DECISION AND ORDER

THE CITY OF ROCHESTER, et al.,

                                         Defendants.

## INTRODUCTION

      This is one of many cases pending before the Court that arises out of protests that erupted

in the City of Rochester in September 2020 following the release of news that Daniel Prude, an

unarmed black man, died during an encounter with police in March 2020.   Plaintiff Daniel

Sorokti—a protester who alleges he was injured and handcuffed during the protests—filed this

action in state court against the City of Rochester ("City"), unknown Rochester Police Department

("RPD") officers, the County of Monroe (the "County"), Monroe County Sheriff Todd Baxter

("Baxter"), unknown Sheriff's deputies, and State Trooper Timothy Nanry,[1] for multiple federal

and state claims.   The City removed the case to federal court on November 19, 2021.   ECF No. 1.

In response to a motion to dismiss, Plaintiff filed an Amended Complaint on January 3, 2022.   ECF

No. 12.

      In the Amended Complaint, Plaintiff raises 13 claims: (1) municipal/*Monell* liability

against the City for alleged violations of the First, Fourth, and Fourteenth Amendments, pursuant

to 42 U.S.C. § 1983; (2) municipal/*Monell* liability against the County and Baxter for alleged

---

[1] The City and individual RPD officers are collectively referred to as "City Defendants."   The County, Baxter, and individual Sheriff's deputies are collectively referred to as "County Defendants."   The RPD officers, Sheriff's deputies, and Nanry are collectively referred to as "individual officers."   All defendants are collectively referred to as "Defendants."

violations of the First, Fourth, and Fourteenth Amendments, pursuant to § 1983; (3) excessive force against all Defendants, pursuant to § 1983; (4) assault and battery against all Defendants, pursuant to New York State law; (5) unlawful seizure/false arrest against all Defendants, pursuant to § 1983; (6) unlawful seizure/false arrest against all Defendants, pursuant to New York State law; (7) First Amendment infringement and retaliation against all Defendants, pursuant to § 1983; (8) failure to intervene against all Defendants, pursuant to § 1983; (9) negligent training, supervision, and discipline against Baxter, pursuant to New York State law; (10) negligent planning of the protest response against Baxter, pursuant to New York State law; (11) negligent training, supervision, and discipline against the City, pursuant to New York State law; (12) negligent planning of the protest response against the City, pursuant to New York State law; and (13) negligence against the individual officers, pursuant to New York State law.

On January 18, 2022, the City Defendants filed a motion to dismiss all claims in the Amended Complaint except the excessive force and assault and battery claims. ECF No. 17. Trooper Nanry answered the Amended Complaint on January 31, 2022. ECF No. 19. On February 28, 2022, the County Defendants filed a motion to dismiss all of the claims asserted against them. ECF No. 23. The motions are now fully briefed.

## FACTUAL BACKGROUND

Plaintiff participated in large public demonstrations on the nights of September 3-4, September 4-5, and September 5-6. ECF No. 12 ¶ 19. Plaintiff was arrested during the first night of protests. *Id.* ¶¶ 26-27. During each of the nights, Plaintiff alleges that he was hit with pepper balls, shoved, pushed, seized, and thrown to the ground by police. *Id.* ¶¶ 22-27. Plaintiff alleges, *inter alia*, that Defendants failed to intervene on Plaintiff's behalf, that the police response to the protests and protesters was part of an unconstitutional municipal practice, that Defendants failed

to properly train officers in proper protest responses, and that Defendants acted negligently in planning for and responding to the protests.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible when the plaintiff pleads facts sufficient to allow the Court to draw reasonable inferences that the defendant is liable for the alleged misconduct. *Id.* In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). At the same time, the Court is not required to credit "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . [with] a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal citations and quotations omitted). The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

## I.     First and Second Claims: Municipal Liability Pursuant to *Monell*

In his first and second claims, Plaintiff seeks to hold the City, the County, and Baxter liable for First and Fourth Amendment violations under *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 693 (1978). In essence, Plaintiff asserts that the individual officers who caused his injuries were acting

in accordance with the City's and County's unconstitutional customs or policies relating to the use of force during peaceful protests. Defendants, for their part, argue that Plaintiff has not adequately pled such a custom or policy. For the reasons explained below, the Court disagrees with Defendants and permits the *Monell* claims to proceed.

### A.    Legal Standard

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." *McMillian v. Monroe Cnty., Alabama*, 520 U.S. 781, 784 (1997); *see Monell*, 436 U.S. at 693. A plaintiff who seeks to impose liability on local governments pursuant to 42 U.S.C. § 1983 must demonstrate that "action pursuant to official municipal policy" caused the injury. *Monell*, 436 U.S. at 692. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell*, 436 U.S. at 691) (additional citations omitted). A plaintiff may demonstrate a policy or custom exists by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, . . . a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02

4

(S.D.N.Y. 2015) (internal quotation marks and brackets omitted).  "To survive a motion to dismiss a municipal liability claim, a plaintiff must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists."  *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95 (S.D.N.Y. 2016) (internal quotation marks and ellipsis omitted); *see also Cruz v. Vill. of Spring Valley*, No. 21-CV-2073, 2022 WL 428247, at *6 (S.D.N.Y. Feb. 11, 2022) (collecting cases).  Put simply, to allege "there is a policy does not make it so."  *Vassallo v. City of New York*, No. 15-CV-7125, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016) (internal quotation marks omitted); *see also Cruz*, 2022 WL 428247, at *6 ("Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." (internal quotation marks omitted)).

### B.     First Claim: Municipal Liability Against the City

Plaintiff has adequately pled a *Monell* claim against the City.  At the outset, the City's argument that Plaintiff has not pled any underlying First or Fourth Amendment constitutional violations is without merit.  The City is correct that *Monell* does not provide a separate cause of action absent an underlying constitutional violation.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." (emphasis in original)).  But, as explained more fully below, Plaintiff has pled adequate First and Fourth Amendment violations: that the City's response to the

5

protests was based on its objection to the message the protestors were expressing, and that the City's actions or inactions led to excessive force being used against protestors.[2]  ECF No. 12 ¶ 63.

The City's arguments regarding Plaintiff's theories of *Monell* liability do not fare better.  The City argues that Plaintiff's statement that the City "approved the force during the demonstrations because its policies authorized excessive levels of force," ECF No. 12 ¶ 85, is conclusory.  But the City's argument is itself conclusory.  It ignores that the Amended Complaint contains additional facts bolstering that allegation.  For instance, Plaintiff alleges that the City knew that large-scale protests focused on police misconduct and racism would result from the eventual release of the body-worn camera footage, *id.* ¶ 60, the City believed that the protests would be led by outside influencers who would use peaceful protestors to shield themselves from police action, *id.* ¶¶ 61-62, and therefore, the City developed a protest response plan that targeted peaceful protestors based on an objection to their message and employed "extreme violence" through the use of military-grade and chemical weapons, *id.* ¶ 63, to quash the protests.  These factual allegations, assumed to be true at this juncture, are not conclusory.

Nor are Plaintiff's allegations surrounding the City's custom of using excessive force against protestors or its failure to train officers to appropriately respond to such protests.  Plaintiff alleges that the City's response to at least three previous protests, in which the police used excessive force against peaceful protestors, establishes that the City had a custom of utilizing such force and that the City knew of its training deficiencies but failed to change them.  *Id.* ¶¶ 75-78.  Plaintiff also alleged that the City's Mobile Field Force ("MFF")—which was "specially

---

[2] The City's contention that Plaintiff has failed to adequately plead an underlying Fourteenth Amendment violation is without merit.  The Court does not read Plaintiff's Amended Complaint to raise an independent claim arising under the Fourteenth Amendment.  Rather, Plaintiff cites the Fourteenth Amendment in accordance with the well-established rule that the Fourteenth Amendment is the vehicle through which the First and Fourth Amendments apply against the states.  *See Cantwell v. Connecticut*, 310 U.S. 296 (U.S. 1940) (incorporating the First Amendment against the states); *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528(1967) (incorporating the Fourth Amendment against the states).

trained and equipped" to provide "rapid, organized and disciplined response to civil disorder [and] crowd control," *id.* ¶ 67—was filled with police officers who had histories of using excessive force, *id.* ¶ 74, and was not actually or adequately trained to appropriately respond to protests, only "large-scale civil disorders such as riots," *id.* ¶¶ 69-72.  This, in turn, led to the disproportionate use of force against peaceful protestors.  *Id.* ¶ 73.  Again, these allegations are far from the sort of conclusory statements that require dismissal.  Therefore, the City's motion to dismiss the first claim for *Monell* liability is denied.

### C.    Second Claim: Municipal Liability Against the County and Baxter

The allegations against the County and Baxter largely mirror those Plaintiff asserted against the City.  And, for many of the same reasons, the County and Baxter move to dismiss those claims asserted against them.  However, for the same reasons explained above with respect to the City, the County and Baxter's motion to dismiss the municipal liability claim is denied.

The County and Baxter also take issue with Plaintiff's reference in the Amended Complaint to the County's "Hazard Mitigation Plan," under which the County trained Sheriff's deputies to use force for both "peaceful demonstrations or acts of violence."  ECF No. 12 ¶ 94.  The County and Baxter argue that this Hazard Mitigation Plan is intended to "reduce the potential impact of natural hazards" and therefore "clearly has nothing to do with training for Sheriff's deputies for responding to a protest."  ECF No. 23-3 at 10-11.  However, the County and Baxter ignore the crux of Plaintiff's other allegations, which, like those against the City, detail unconstitutional municipal policies, practices, and training failures.

For example, Plaintiff alleges that Baxter and the County subscribed to theory that Black Lives Matter protests were led by outside agitators, ECF No. 12 ¶ 88, that violent protestors would use nonviolent protestors as human shields, *id.* ¶ 89, that the County and Baxter coordinated with

7

the City and RPD to develop a coordinated protest response plan that included using disproportionate violence centered on retaliation for the message the protestors were expressing, *id.* ¶ 90, and that Baxter and the County failed to train Sheriff's deputies to meaningfully differentiate between peaceful protestors and violent ones, *id.* ¶ 92. These allegations plausibly allege an unconstitutional custom or practice.

Unlike Plaintiff's allegations against the City, the Amended Complaint does not contain specific allegations of prior instances in which the Sheriff's Office used excessive force against protestors. The County and Baxter argue that the absence of such allegations demonstrates that neither could have had knowledge that any problems were widespread. However, Plaintiff *does* allege that prior to the protests which are the subject of this lawsuit, County legislators called on the Sheriff's Office to implement new training protocols to correct its deficient practices. Although this is a close call, the Court determines at this early stage that such factual allegations are sufficient to survive the motion to dismiss.

## II.    Third Claim: Excessive Force

Only the County Defendants move against Plaintiff's excessive force claim.

To the extent Plaintiff asserts his excessive force claim against Baxter, that claim will not be dismissed. "A supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983." *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 475 (W.D.N.Y. 2017). The Amended Complaint contains no allegations that Baxter personally used excessive force on Plaintiff. However, as explained below, Plaintiff alleges that unknown Sheriff's deputies used excessive force against him. The Second Circuit has recognized "the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify

the subordinate officials who have personal liability." *Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir. 1998). Accordingly, the Court will not dismiss Baxter from the case until Plaintiff has an opportunity to conduct discovery as to the identities of the Sheriff's deputies. Once such discovery reveals the identifies of the Sheriff's deputies, Baxter may again move to dismiss. *Murphy v. Goord*, 445 F. Supp. 2d 261 (W.D.N.Y. 2006) (denying supervisor's motion to dismiss so that plaintiff could conduct discovery to ascertain identity of John Doe defendants).

The remaining County Defendants argue that the claims against individual, unnamed sheriffs must be dismissed because Plaintiff's allegations constitute impermissible "group pleading" and that Plaintiff has not alleged that County Defendants used the requisite force. ECF No. 23-3 at 14-15. Both arguments fail.

First, the County Defendants argue that the Amended Complaint contains no allegation that any County Defendant used excessive force on Plaintiff. ECF No. 23-3 at 15. Rather, the County Defendants insist that Plaintiff alleges that Trooper Nanry effectuated his arrest, but then "tacked on" the allegation "upon information and belief" that "an RPD officer and/or Sheriff's deputy assisted Officer Nanry," in an attempt to "draw the remaining unnamed law enforcement officers into the allegations." [3] *Id.* at 15. To be sure, a complaint that "lump[s] all the defendants together in each claim provid[es] no factual basis to distinguish their conduct . . . . fail[s] to satisfy [the] minimum [pleading] standard." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotations omitted). But Plaintiff has not lumped all Defendants' conduct together. Rather, he claims that unknown Sherriff's deputies assisted Trooper Nanry in arresting him. That is a specific allegation regarding as-of-yet unknown deputy or deputies. Given

---

[3] The County Defendants repeat this same argument as a reason to dismiss each claim. For the same reasons outlined below with respect to the excessive force claim, the Court finds this argument unpersuasive as a basis to dismiss the remaining claims.

the presence of law enforcement from multiple jurisdictions at the protests, such a claim is not implausible. The Court will permit Plaintiff to conduct discovery to determine the identities of any such sheriff's deputies.

Second, County Defendants insist that Fourth Amendment liability is premised on the use of "excessive force when detaining or arresting individuals." ECF No. 23-3 at 15; *see Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). Because, they say, Plaintiff has not alleged that a County Defendant arrested him, no County Defendant can be liable for excessive force. ECF No. 23-3 at 15. However, as explained above, Plaintiff *does* allege that Sheriff's deputies "used excessive force . . . when they struck him with a baton, threw him to the ground, and slammed his face into the pavement." ECF No. 12 ¶ 116. Even if Sheriff's deputies did not effectuate Plaintiff's arrest, Plaintiff adequately alleges that they used "less-lethal" weapons and chemical weapons against protestors. *Id.* ¶ 117. Courts have routinely concluded that the use of such weapons against protestors constitutes a seizure for purposes of the Fourth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 540-42 (2d Cir. 2018) ("Our sister circuits and district courts in this Circuit have routinely applied excessive force principles to crowd control situations."). Accordingly, County Defendants' motion to dismiss the Third Claim for excessive force is denied.

## III.   Fourth Claim: Assault & Battery

The County Defendants move to dismiss the Fourth Claim for assault and battery for the same reasons they move to dismiss the Third Claim for excessive force. "Courts in the Second Circuit have found that [f]ederal excessive force claims and state law assault and battery claims against police officers are nearly identical." *John v. City of New York*, 406 F. Supp. 3d 240, 245 (E.D.N.Y. 2017) (internal quotation marks omitted). Therefore, for the same reasons articulated

above, the County Defendants' motion to dismiss the Fourth Claim for assault and battery is denied.

**IV.     Fifth & Sixth Claims: Unlawful Search/False Arrest under § 1983 and State Law**

"The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." *Maron v. Cty. of Albany*, 166 F. App'x 540, 541 (2d Cir. 2006) (summary order) (internal quotation marks omitted).  Accordingly, the Court will address Defendants' motions to dismiss these claims together.

 "[U]nder New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* "The existence of probable cause to arrest" renders the confinement privileged "and is a complete defense to an action for false arrest." *Horvath v. City of New York*, No. 12-CV-6005, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Martinez v. City of New York*, 340 F. App'x 700, 701 (2d Cir. 2009) (summary order) (internal quotation marks and brackets omitted).

Defendants argue that there was probable cause to arrest Plaintiff on the night of September 3-4, 2020, for a violation of "Local Emergency Order Pursuant to Executive Law – Section 24." In that emergency order, dated September 3, 2020, Mayor Lovely A. Warren ordered that "between the hours of 11:00 p.m. and 5:00 a.m., it shall be unlawful to gather in groups of five or more in a public place in the City of Rochester."  ECF No. 17-1 at 40.  Violation of that provision of the emergency order constituted a class B misdemeanor.  *Id.*  The Amended Complaint makes clear

11

that Plaintiff was arrested at some point after 12:45 a.m., while he was participating in protests with "thousands of people." ECF No. 12 ¶¶ 17, 25-28. Accordingly, there was probable cause for Plaintiff's arrest.

Plaintiff argues that he was never charged with a violation of the emergency order and was instead charged with disorderly conduct, for which there was no probable cause. ECF No. 21 at 20. However, "as long as probable cause exists to arrest a suspect for some crime, it is an absolute defense to a claim for false arrest." *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 476 (E.D.N.Y. 2016).

Plaintiff also unpersuasively argues that the emergency order is unconstitutional or that its constitutionality is still the subject of ongoing litigation. The constitutionality of the emergency order, however, does not bear on whether Defendants had probable cause to arrest him at the time he was arrested. "Officials charged with enforcing a statute on the books . . . are generally entitled to rely on the presumption that all relevant legal and constitutional issues have been considered and that the statute is valid." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 105 (2d Cir. 2003) (concluding that officers were entitled to qualified immunity). There is no dispute that the emergency order was "on the books" at the time of Plaintiff's arrest.

Next, Plaintiff suggests that "most of the events" he complains of occurred before 11:00 p.m. when the emergency order's curfew began. ECF No. 21 at 14. Although some of Plaintiff's interactions with the police occurred before 11:00 p.m., the most serious interaction—and the one that is the subject of these claims—was Plaintiff's arrest, which took place around 12:45 a.m., *during* the curfew. ECF No.12 ¶ 25.

Finally, Plaintiff suggests that there was no probable cause to arrest him for a violation the emergency order because there is no evidence that Plaintiff was engaging in conduct that was

unlawful under the emergency order's terms.  To that end, Plaintiff argues that the emergency order does not define the term "gather in groups" nor is there evidence in the Amended Complaint that Plaintiff was in a group of five or more people.  ECF No. 21 at 20-21.  This argument borders on disingenuous, since the entire crux of Plaintiff's Amended Complaint is that he was participating in a mass protests with "thousands of people," ECF No. 12 ¶ 17, groupings that plainly fall within the purview of the emergency order.  Accordingly, Defendants' motions to dismiss the false arrest claims are granted.[4]

## V.    Seventh Claim: First Amendment Infringement & Retaliation

The Amended Complaint advances two theories of First Amendment liability: (a) that Defendants "retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment" and (b) that Defendants "imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to subjecting Plaintiff to excessive force, in arresting and prosecuting [P]laintiff, in selectively enforcing laws and regulations against Plaintiff, and in otherwise violating Plaintiff's rights."[5]  ECF No. 12 ¶ 159.

### A.    Retaliation

The City Defendants do not explicitly move against the retaliation claim, but the County Defendants do. "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

---

[4] Although Plaintiff's unlawful seizure/false arrest claim pursuant to § 1983 does not specifically reference Plaintiff's arrest on September 3-4, 2020, both the § 1983 and state law claims suggest that the arrest is the only "seizure" Plaintiff challenges.

[5] It is unclear whether these two theories are distinct.  But, because the parties treat them differently, the Court will address them separately.

Defendants do not seriously contest the first two elements, focusing instead on the third. To that end, the County Defendants argue that Plaintiff has not established any constitutional injury because Plaintiff has not alleged any "specific instances in which [Plaintiff] desired to exercise [his] First Amendment rights but [were] chilled by" Defendants' conduct. ECF No. 23-3 at 21. In other words, "there is no allegation that [Defendants] prevented Plaintiff from protesting by arrest, detainment, or otherwise." *Id.*

However, the Amended Complaint states that Plaintiff "was prevented from further protesting on the night of September 3-4, 2020 when he was arrested" and that the "excessive violence" on subsequent nights of protesting "chilled and deterred him from engaging in future protests, for fear of being subjected to similar unlawful actions by law enforcement." ECF No. 12 ¶ 165. At the very least, Plaintiff has alleged that Defendants prevented him from further protesting during the time he was under arrest. *Id.* ¶¶ 26-28.

To the extent Defendants argue that the City's emergency order vitiates any First Amendment retaliation claim, that argument is misplaced. The City Defendants insist that "this court has already found that the City complied with reasonable time, place, and manner restrictions on free speech." ECF No. 17-2 at 10. That is not entirely accurate. To be sure, in *Martin v. Warren*, 482 F. Supp. 3d 51 (W.D.N.Y. 2020), District Judge Charles J. Siragusa denied plaintiff-protestors' motion for a preliminary injunction, concluding that they were not likely to succeed on their arguments that the emergency order's curfew was pretextual, unrelated to significant government interests, or not narrowly tailored. But he did not affirmatively find that the emergency order was a reasonable time, place, and manner restriction. And even if he did, there is nothing to suggest that police action purportedly taken under the emergency order could not

supply the basis for a retaliation claim.  Finally, as Plaintiff points out, many of the alleged retaliatory acts did not take place during the time the emergency order was in force.

### B.      Viewpoint Discrimination

Government "[d]iscrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "Viewpoint discrimination is a subset or particular instance of the more general phenomenon of content discrimination, in which the government targets not subject matter but particular views taken by speakers on a subject." *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 150 (2d Cir. 2004) (quoting another source).  The government discriminates against viewpoints when it disfavors certain speech because of "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger*, 515 U.S. at 829.

Plaintiff alleges that Defendants' response to the protestors and use of excessive force against them was motivated by the viewpoint they espoused: that systemic racism was pervasive in law enforcement.  ECF No. 12 ¶¶ 16-18, 61-64.

Defendants seem to suggest that any action taken under the emergency order—such as Plaintiff's arrest—cannot be construed as viewpoint discrimination because the emergency order itself is viewpoint neutral.  But, as explained above, the emergency order does not absolve Defendants of all of their actions, especially those actions that were not explicitly made pursuant to it.  Defendants do not argue otherwise.

As this stage, at least, Plaintiff's First Amendment claims may proceed.

### VI.    Eighth Claim: Failure to Intervene – Individual Defendants

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law

enforcement officers in their presence." *Allen v. City of New York*, 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007) (quoting another source).  To state a claim against an officer for his or her failure to intervene, a plaintiff must allege facts demonstrating that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Defendants argue first that Plaintiff has failed to plead the second element—that individual officers and Sheriff's deputies knew that Plaintiff's constitutional rights were being violated.  ECF No. 17-2 at 11.  Although this claim in the Amended Complaint does not contain the words "knew" or "knowledge," it does state facts sufficient to infer knowledge.  For example, the Amended Complaint contains facts suggesting that individual officers and Sheriff's deputies were in close proximity to the alleged constitutional violations as they were occurring and were therefore aware of them.  *See* ECF No. 12 ¶¶ 20-39 (describing the actions of officers and deputies in arresting and beating Plaintiff).  These allegations are sufficient to proceed to discovery.  *Weaver v. City of New York*, No. 13-CV-20 CBA SMG, 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("Because [plaintiff's] complaint alleges facts from which this Court could reasonably infer that at least one of the defendants had reason to know that [plaintiff] was being unjustifiably arrested, her claim may proceed.").

Second, Defendants argue that "a failure to intervene claim cannot lie against law enforcement officers who also engaged in that constitutional violation."  ECF No. 17-2 at 11.  Essentially, Defendants urge the Court to dismiss the failure to intervene claim because Defendants could not possibly have committed the underlying constitutional violations (such as excessive

force and false arrest) while they simultaneously failed to intervene to prevent those same violations.

That is a misreading of the facts and law.  Plaintiff alleges multiple constitutional violations, and it is possible that a defendant directly participated in one constitutional violation while he failed to intervene in another.  Moreover, "the plaintiff is allowed to plead in the alternative" and "the alternative claims need not be consistent."  *Breton v. City of New York*, 404 F. Supp. 3d 799, 814 (S.D.N.Y. 2019) (declining to dismiss failure to intervene claim on the basis that defendant "directly participated in both the arrest and prosecution and therefore could not have intervened").

## VII.    Ninth[6] Claim: Negligent Training, Supervision, and Discipline – Baxter

"It is well-settled under New York law that a sheriff may not be held vicariously liable for the torts committed by its employees while they are performing a criminal justice function."  *Ryan v. Moss*, No. 11-CV-6015P, 2013 WL 956722, at *18 (W.D.N.Y. Mar. 12, 2013).  There is no question that the Sheriff's deputies here were performing a criminal justice function during the protests.

However, in contrast to *respondeat superior* liability, "a sheriff *may* be held liable for his own negligent conduct, including a failure to train or supervise his subordinates."  *Id.* at *19 (emphasis added); *see Cash v. Cnty of Erie*, No. 04-CV-182C(F), 2007 WL 2027844, at *5 (W.D.N.Y. July 11, 2007) ("[A] cause of action sounding in negligence is legally sustainable against a [sheriff] when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer.").

---

[6] The Amended Complaint numbers both the failure to intervene and the negligent training, supervision, and discipline claim against the County Defendants as the eighth claim.  Accordingly, the Court re-numbers the subsequent claims.

Baxter argues that he cannot be held liable for his own alleged negligent conduct if the Sheriff's deputies were acting outside the scope of their employment.  This argument conflates the unique standard for a sheriff's liability under a negligent training, supervision, and discipline theory, with the standard for other municipal employers, explained below with respect to the City. Baxter's argument, therefore, is misplaced.

So too is Baxter's argument that the Amended Complaint is devoid of allegations that Baxter was ever aware of any supervision or training failures.  ECF No. 23-3 at 25.  As explained above with respect to *Monell* liability, Plaintiff has alleged that Baxter took "no steps to train Sheriff's Deputies on lawfully policing protests and other First Amendment activities," ECF No. 12 ¶ 93, and that Baxter failed to train Sheriff's Deputies on how to differentiate peaceful protests from acts of violence and how they should respond to each differently, *id.* ¶ 94.  Accordingly, Baxter's motion to dismiss the negligent training, supervision, and discipline claim is denied.

## VIII.   Tenth Claim: Negligent Planning – Baxter

Plaintiff asserts a claim against Baxter for his own negligent planning of the protest response.  Baxter and Plaintiff agree that a "special duty" is required to establish a negligence claim against Baxter, but Baxter argues that Plaintiff has not established that Baxter owed a "special duty" to Plaintiff and that the absence of such a "special duty" is fatal to his claim.  The Court agrees with Baxter that Plaintiff must allege a "special duty," but it concludes that—at least for purposes of this motion to dismiss—Plaintiff has done so.

"When a negligence claim is asserted against a municipality or its employees, the threshold inquiry is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose."  *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (quoting another source).  "A municipality performs a governmental function when

its acts are undertaken for the protection and safety of the public pursuant to the general police powers." *Id.* at 134-35. "Where, as here, a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured party." *Id.* at 135. It is Plaintiff's burden to establish a special relationship and "where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity." *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 426 (2013).

> To establish such a special relationship, Plaintiff must plead four elements:
>
> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Id.*

Plaintiff argues that no special duty/relationship is required where, as here, the municipality has not failed to protect Plaintiff against a *third party*; rather, Plaintiff argues that Baxter negligently failed to protect protestors against himself and his deputies. There is no support for this argument. To be sure, many of the "special relationship" cases the parties cite involve third parties. But the New York Court of Appeals recently confirmed that "plaintiffs must establish that a municipality owed them a special duty when they assert a negligence claim *based on actions taken by a municipality acting in a governmental capacity*." *Ferreira v. City of Binghamton*, No. 10, 2022 WL 837566, at *1 (N.Y. Mar. 22, 2022) (emphasis added). In *Ferreira*, the Second Circuit certified the following question to the New York Court of Appeals:

> Does the "special duty" requirement—that, to sustain liability in negligence against a municipality, the plaintiff must show that the duty breached is greater than that owed to the public generally—apply to claims of injury inflicted through municipal negligence, or does it apply only when the municipality's negligence lies in its

failure to protect the plaintiff from an injury inflicted other than by a municipal employee?

*Id.* at *2.  The New York Court of Appeals answered that a plaintiff must plead a special duty even where, as here, Plaintiff alleges injury from a municipal employee's direct negligence, rather than from a municipality's failure to protect Plaintiff from some third party.  It explained that a rule, like that advanced by Plaintiff "purporting to draw a distinction between those negligence claims alleging injuries inflicted by municipal actors and those in which the injury is alleged to be inflicted by a nongovernmental actor [ ] is belied by our precedent, unworkable, and contrary to the public policies upon which the special duty requirement is founded."  *Id.* *6.  Accordingly, Plaintiff must establish a special duty to survive a motion to dismiss the negligent planning claim.

Here, Plaintiff alleges that Baxter "had a special duty to ensure that the rights of Plaintiff and other protestors to free speech, expression and to assemble under Article I, section 8 of the New York State Constitution were not violated, and that protestors were not assaulted, battered, and subjected to excessive force and/or falsely arrested by law enforcement."  ECF No. 12 ¶ 183.  Although courts have not specifically found that a special duty arises in these circumstances, *Ferreira* is instructive.

There, the police obtained information that Michael Pride—a suspect who police believed to be armed and dangerous—resided at a certain apartment in Binghamton.  *Ferreira*, 2022 WL 837566, at *1.  The police obtained a no-knock warrant for the residence, surveilled the residence, and observed Pride leave the residence.  The police never saw Pride return to the apartment or conduct additional surveillance.  But because the police believed Pride to be heavily armed and dangerous, the following morning, they executed the no-knock warrant with a SWAT team.  Upon entry, the police encountered plaintiff, who was unarmed, and shot him in the stomach.  Plaintiff sued Binghamton and the police department in federal court, alleging that defendants were

negligent in planning the raid. *Id.* *2. A jury determined that Binghamton was negligent and it appealed to the Second Circuit, which certified the "special duty" question to the New York Court of Appeals. As explained above, the New York Court of Appeals determined that a plaintiff must establish a "special duty" when suing a municipality in negligence for an injury it directly inflicted. But the court noted that "because the underlying premise of the certified question appears to be that a special duty could not be established in a scenario like the one presented, we take this opportunity to clarify that this is not the case: a special duty may be established where the police plan and execute a no-knock search warrant on a targeted residence." *Id.* at *8.

The court explained that execution of a no-knock warrant raises a "special duty" because "when police plan and execute a no-knock warrant, they effectively take control of the targeted premises, knowingly creating an unpredictable and potentially dangerous condition at a particular premises." *Id.* at *9. The court further explained that

> [i]n a no-knock warrant situation, the police exercise extraordinary governmental power to intrude upon the sanctity of the home and take temporary control of the premises and its occupants. In such circumstances, the police direct and control a known and dangerous condition, effectively taking command of the premises and temporarily detaining occupants of the targeted location. As a result, the municipality's duty to the individuals in the targeted premises, a limited class of potential plaintiffs, exceeds the duty the municipality owes to the members of the general public. A special duty therefore arises when the police plan and execute a no-knock search warrant at an identified residence, running to the individuals within the targeted premises at the time the warrant is executed. In other words, in those circumstances, the police take positive control of a known and dangerous condition, creating a special duty under the third situation recognized by this Court.

*Id.*

Although this case does not present the no-knock situated addressed in *Ferreira*, there are some compelling similarities. Indeed, like executing a no-knock warrant, law enforcement responding to a protest may in some senses take "positive control of a known and dangerous condition"—one that is dynamic, potentially dangerous, and buttressed by constitutional

protections.  That is what Plaintiff alleges here.  *See, e.g.*, ECF No. 12 ¶ 21 (alleging that police took control of Exchange Street on the night of September 3); ¶ 41 (alleging that police were directing the flow of the protestors); ¶¶ 25, 42-43 (alleging that the police issued dispersal orders and enforced those orders with force).  Neither party cites cases—let alone any cases post-*Ferreira*—addressing the unique facts presented here.  Given *Ferreira*'s reasoning and the absence of case law confirming that special duty does not exist—while also recognizing the absence of case law directly on point establishing such a special duty in these circumstances—the Court concludes that the claim should proceed.   While the Court cannot say with certainty that a special duty exists in the circumstances presented by Plaintiff here, the Court finds that Plaintiff's allegations are sufficient to survive the motion to dismiss.[7]

## IX.    Eleventh Claim: Negligent Training, Supervision, and Discipline – City

The City moves to dismiss this claim and Plaintiff does not appear to oppose dismissal. "To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment.  If the employee acted within the scope of her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*."[8]  *Velez*, 730 F.3d at 136 (internal quotation marks omitted).

---

[7] Baxter does not argue that he cannot be held liable for this negligent planning claim under a theory of *respondeat superior*, as in the negligent training, supervision, and discipline claim.  The parties do not distinguish Baxter's own alleged negligent actions in failing to properly plan the protest response from the negligent actions of his employees. Nor do they argue that the "special duty" requirement does not apply to Baxter because, as sheriff, he is not a municipality.   Accordingly, the Court declines to engage further in any such analysis.  *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

[8] Notably, this standard is different than the standard for negligent training, supervision, and discipline against a county sheriff, as described above.

Here, the Amended Complaint states that "[a]t all relevant times" the RPD officers "were acting within the scope of their employment."  ECF No. 12 ¶¶ 4, 9.  Therefore, there can be no claim for negligent training, supervision, and discipline against the City, and the City's motion to dismiss that claim is granted.

## X.      Twelfth Claim: Negligent Planning – City

Plaintiff alleges the existence of a special duty flowing from the City to the protestors.  ECF No. 12 ¶ 201 ("The CITY had a special duty to ensure that the rights of Plaintiff and other protestors to free speech, expression and to assemble under Article I, section 8 of the New York State Constitution were not violated, and that protestors were not assaulted, battered, or subjected to excessive force and/or falsely arrested by law enforcement.").  For the same reasons articulated above with respect to Baxter, the City's motion to dismiss the negligent planning claim is denied.

## XI.     Thirteenth Claim: Negligence

Plaintiff alleges that individual RPD officers and Sheriff's deputies are liable under a negligence theory on the basis that they had duties to "permit the protestors to engage in First Amendment Activities" and "not use force against any individual protestor in the absence of individualized cause or legal justification," and that they breached those duty.  ECF No. 12 ¶¶ 219-22.  However, this is the same conduct for which Plaintiff asserts his battery, failure to protect, and excessive force claims.  While, as discussed above, a plaintiff may plead in the alternative, where, as here, he alleges intentional conduct—such as for battery or excessive force—"he fails to state negligence." *Strobridge v. City of Elmira*, No. 20-CV-1125S, 2022 WL 597464, at *11 (W.D.N.Y. Feb. 28, 2022).   Accordingly, Plaintiff's negligence claims against individual defendants are dismissed.

**CONCLUSION**

For the reasons explained above, the Defendants' motions to dismiss, ECF Nos. 17, 23, are

GRANTED IN PART and DENIED IN PART.  The Fifth, Sixth, Eleventh, and Thirteenth claims

are DISMISSED in their entirety.  The following claims may proceed:

(1)     municipal/*Monell* liability against the City for alleged violations of the First,
        Fourth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983;

(2)     municipal/*Monell* liability against the County and Baxter for alleged violations of
        the First, Fourth, and Fourteenth Amendments, pursuant to § 1983;

(3)     excessive force against all Defendants, pursuant to § 1983;

(4)      assault and battery against all Defendants, pursuant to New York State law;

(7)     First Amendment infringement and retaliation against all Defendants, pursuant to
        § 1983;

(8)     failure to intervene against all Defendants, pursuant to § 1983;

(9)     negligent training, supervision, and discipline against Baxter, pursuant to New
        York State law;

(10)    negligent planning of the protest response against Baxter, pursuant to New York
        State law; and

(12)    negligent planning of the protest response against the City, pursuant to New York
        State law.

A status conference is scheduled in all protest-related cases for July 21, 2022, at 3:00 p.m.

IT IS SO ORDERED.

Dated: June 30, 2022
       Rochester, New York              HON. FRANK P. GERACI, JR.
                                        United States District Judge
                                        Western District of New York

24